UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LEE JOHNSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RUSH ENTERPRISES, INC., et al.,<br><br>Defendants. | No.  1:19-cv-00105-NONE-SAB<br><br>ORDER GRANTING MOTION TO INTERVENE<br><br>(Doc. No. 53) |

Plaintiffs William Lee Johnson, by and through his Guardian ad Litem Jerard Johnson, Joan Johnson, and B & N Trucking, Inc. filed this lawsuit against defendants Natural Gas Fuel Systems, Inc. (doing business as Momentum Fuel Technology), Carleton Technologies, Inc., and Papé Trucks, Inc. after plaintiff William Johnson was injured in an explosion at a gas station allegedly caused by a defective gas fueling system, which was designed, manufactured, and/or sold by defendants. (Doc. No. 13.)[1] Currently pending before the court is a motion to intervene filed by Markel American Insurance Company ("Markel"), representing that it is a subrogee of the owner of the gas station where the explosion occurred. (Doc. No. 53-1.)  Plaintiffs and defendants do not oppose the motion to intervene. (Doc. Nos. 54, 57, 58, 59.)  For the reasons set forth below, the motion to intervene is granted.

---

[1] Plaintiffs have previously voluntarily dismissed Cobham PLC as a defendant in this action. (Doc. Nos. 51, 52.)

1

# BACKGROUND

Plaintiff B & N Trucking purchased a tractor truck, commonly known as a "big rig", equipped with a compressed natural gas ("CNG") fueling System, "only days before" the explosion. (Doc. No. 13 ¶ 16.) The CNG System consists of three carbon fiber cylinders attached to the rear of the passenger cabin of the tractor, and also had a side-belly cylinder affixed to the passenger side of the tractor. (*Id.* ¶¶ 17–18.) On December 21, 2018, plaintiff William Johnson fueled the tractor equipped with the CNG System for the very first time at the gas station in Buttonwillow, California. (*Id.* ¶ 23.) As plaintiff William Johnson was fueling the tractor, one of the cylinders behind the passenger cabin of the tractor "ruptured." (*Id.*) "A catastrophic release of pressure occurred causing a shock wave to emanate outward." (*Id.* ¶ 24.) Plaintiff William Johnson who was standing next to the tractor and the ruptured cylinder at the time of the explosion "sustained severe personal injuries including brain damage and multiple fractures." (*Id.* ¶ 25.) "The shock wave was so powerful that portion of the Tractor and CNG System flew hundreds of feet in every direction, the Tractor was destroyed and the surrounding [gas station] sustained major structural damage." (*Id.* ¶ 26.)

Plaintiffs filed their first amended complaint ("FAC") alleging various theories of strict products liability and negligence, a claim for breach of implied warranty of merchantability, and a loss of consortium claim against defendants due to the explosion at the gas station. (*Id.* ¶¶ 31–82.) Defendant Natural Gas Fuel Systems designed and manufactured the CNG System (*id.* ¶ 19), defendant Carleton Technologies designed and manufactured the carbon fiber cylinder used in the CNG System that ruptured and exploded (*id.* ¶ 20), and Papé Trucks installed the CNG System onto the tractor that it subsequently sold to plaintiff B & N Trucking. (*Id.* ¶¶ 19, 21.)[2] Defendants have filed crossclaims, counterclaims, or both. (Doc. Nos. 22, 28, 36.)

/////

---

[2] Plaintiffs assert this court has diversity jurisdiction over this action. (Doc. No. 13 ¶ 13; *see id.* ¶¶ 5–11 (alleging plaintiffs are residents of California and defendants are residents of either Texas, Maryland, or Oregon).) Plaintiffs further allege venue is proper in this District because the explosion occurred in Buttonwillow, an unincorporated territory in Kern County, California. (*Id.* ¶¶ 1, 15.) Defendants do not contest federal jurisdiction or venue.

Markel seeks to intervene as a matter of right in this litigation as the subrogee of American Natural Gas, LLC ("American") (Doc. No. 53-2.) According to Markel, American has at all relevant times owned the gas station in Buttonwillow where the explosion occurred. (Doc. No. 53-1 ¶ 4.) At the time of the explosion, Markel states an insurance policy was in force covering American's gas station, "including its structures and contents," from certain losses. (*Id.* ¶ 6.) In other words, Markel insured American for structural damage at the time of the explosion. (*See id.*) As a result, Markel "became obligated pursuant to the terms of its policy to pay benefits in an amount of no less than $498,921.33" as a result of the explosion. (*Id.* ¶ 22.) Markel attempts to seek this amount in monetary damages by way of a complaint ("proposed complaint"), which is attached to the motion for intervention. (*See generally* Doc. No. 53-1.) In the proposed complaint, Markel asserts claims for negligence and strict products liability based on a manufacturing defect, design defect, and failure to warn. (*Id.*)[3] American has not been a named a party to this action. (*See* Doc. No. 53-2 at 23–24 ("Markel's rights are not represented in this litigation as its insured is not a party to the action.").)

## LEGAL STANDARD

"[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit." *U.S. v. ex rel. Eisenstein v. City of New York, N.Y.*, 556 U.S. 928, 933 (2009). Markel moves to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), which permits nonparties to intervene as a matter of right. Rule 24(a)(2) is "broadly interpreted in favor of intervention" and courts are guided primarily by practical considerations, not technical distinctions." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Intervention is required for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Ninth Circuit has

---

[3] Though the caption of the proposed complaint states it asserts a claim for breach of implied warranty of merchantability, there is no such claim asserted in the body of the proposed complaint. (*See generally* Doc. No. 53-1.)

articulated the standard for intervention as a matter of right under Rule 24(a)(2) as follows:

> (1) the [applicant's] motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 440–41 (9th Cir. 2006) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). While the applicant has the burden to demonstrate that each factor is satisfied and "[f]ailure to satisfy any one of the requirements is fatal to the application," Rule 24(a)(2) is construed broadly in favor of intervention. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

## DISCUSSION

In seeking intervention as a matter of right, Markel argues its application is timely and that it has a "direct and immediate interest" in this lawsuit. (Doc. No. 53-2 at 3:20–6:24.) No party opposes Markel's motion to intervene. (Doc. Nos. 54, 57, 58, 59.) As discussed in detail below, Markel satisfies all four requirements to intervene as a matter of right under Rule 24(a)(2).

**A.     Timeliness**

"Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *United States v. State of Or.*, 913 F.2d 576, 588 (9th Cir. 1990)). In determining whether a motion to intervene was timely filed, courts primarily consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A. Unified School Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation omitted). "[T]he timeliness requirement for intervention as of right should be treated more leniently than for permissive intervention because of the likelihood of more serious harm." *United States v. State of Or.*, 745 F.2d 550, 552 (9th Cir. 1984).

"[P]rejudice to existing parties is 'the most important consideration in deciding whether a motion for intervention is untimely.'" *L.A. Unified School Dist.*, 830 F.3d at 857 (quoting *State of Or.*, 745 F.2d at 552). Since no existing party opposes Markel's intervention, the court must

conclude that Markel's intervention will not prejudice the existing parties. *See Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989). Because prejudice is not an issue here, the court will limit its discussion to the first and third factors of timeliness, i.e., assessing the stage of litigation at which intervention was sought and the length of and reason for any delay.

Here, Markel sought to intervene at a relatively early stage in the litigation, even though it appears it could have done so earlier. *Compare League of United Latin Am. Citizens*, 131 F.3d at 1303 (noting that when a moving party waits 27 months after the action commenced, "it fights an uphill battle in its effort to intervene"), *with Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (stating that the motion to intervene, which was sought four months after the action commenced, "was filed at a very early stage"). The explosion occurred on December 21, 2018, (Doc. No. 13 ¶ 1), and plaintiffs commenced this litigation about a month later on January 24, 2019. (Doc. Nos. 1, 4.) Markel moved to intervene on November 12, 2019, about 10 months after litigation began and 11 months after the explosion occurred. (Doc. No. 53.) Several months after Markel moved to intervene, on May 1, 2020, the assigned magistrate judge ordered that nonexpert discovery will close in this action on February 12, 2021. (Doc. No. 67 at 2.) The court vacated all other discovery deadlines, including the cutoff for expert discovery, in light of "the COVID-19 restrictions in place across the nation." (*Id.* at 1.) Accordingly, given the status of this case, 10 to 11 months is not a "substantial length of time" amounting to undue delay. *See League of United Latin Am. Citizens*, 131 F.3d at 1302; *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996) ("Although the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention."). The court has not "substantively—and substantially—engaged the issues." *See League of United Latin Am. Citizens*, 131 F.3d at 1303. Given the progress of the proceedings, Markel moved to intervene at a relatively early point in this litigation. *See Idaho Farm Bureau Fed'n*, 58 F.3d at 1397. Accordingly, Markel has filed a "timely motion" to intervene under Rule 24(a).

**B.     Significantly Protectable Interest**

"The requirement of a significantly protectable interest is generally satisfied when 'the interest is protectable under some law, and that there is a relationship between the legally

5

protected interest and the claims at issue.'" *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Sierra Club*, 995 F.2d at 1484). A proposed intervenor's interest has a "relationship" with the pending action "only if the resolution of the plaintiff's claims actually will affect the applicant." *Id.* (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998)).

Markel satisfies the two-prong test for a significantly protectable interest. The explosion, which is at the very heart of this litigation, occurred at a gas station owned by Markel's insured, American. (Doc. No. 53-1 ¶ 5.) Under California law, Markel "stands in the shoes" of American, as its subrogee, to recover for damages caused by third-party tortfeasors such as defendants. *See, e.g.*, *Griffin v. Calistro*, 229 Cal. App. 3d 193, 196 (1991). Markel has legally cognizable claims, standing in the shoes of American, against defendants for their alleged roles in causing the explosion at American's gas station. *See id.* The proposed complaint asserts various causes of action against defendants for their respective roles in designing, manufacturing, and/or selling the allegedly defective CNG System. (Doc. No. 53-1 ¶¶ 25, 28–29, 36–37.) Therefore, Markel has an interest that "is protectable under some law," and the first prong is satisfied. *See Arakaki*, 324 F.3d at 1084.

Additionally, Markel satisfies the second prong because the causes of action asserted in the proposed complaint have a "relationship" with "the claims at issue" in the FAC. *Id.* Before the explosion occurred, plaintiff William Johnson drove to the gas station owned by American in a tractor with the allegedly defective CNG System. (*See* Doc. No. 13 ¶ 23.) The resulting explosion caused physical injury to plaintiff William Johnson, property damage to the tractor owned by plaintiff B & N Trucking, and property damage to the gas station owned by American and insured by Markel. (*Id.* ¶¶ 25–26.) All victims' purported injuries resulted from the same incident (i.e., the December 21, 2018 explosion at the gas station in Buttonwillow, California), involving the same product (i.e., the CNG System as installed on the tractor) which was designed, manufactured, and/or sold by the same defendants. Indeed, the factual allegations underlying the claims in the FAC and proposed complaint are nearly identical. (*Compare* Doc. Nos. 13 ¶¶ 35, 66–67, *with* 53-1 ¶¶ 25, 28–29, 36–37.) If the court or the trier of fact determines certain issues in this litigation, ranging from breach to application of California strict products liability law,

6

those determinations and the "resolution of the plaintiff's claims actually will affect" Markel. *See Arakaki*, 324 F.3d at 1084 (quoting *Donnelly*, 159 F.3d at 410).

For these reasons, the court finds that Markel has a significantly protectible interest in the litigation. *See, e.g.*, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1219 (9th Cir. 1995) (noting in passing the intervention of a property insurer in litigation brought by lessee of property against the manufacturer of a circuit breaker for an alleged defect which caused a fire).[4]

## C. Impairment on Ability to Protect Interest

The disposition of the action, without the proposed intervenor's involvement, must have a "potential adverse impact" on the would-be intervenor's interest, i.e., "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." *See S.E.C. v. Navin*, 166 F.R.D. 435, 440 (N.D. Cal. 1995); Fed. R. Civ. P. 24(a). Importantly, "intervention as of right does not require an absolute certainty that a party's interest will be impaired[.]" *Citizens for Balanced Use*, 647 F.3d at 898.

Markel notes that a party's interest may be impaired or impeded under Rule 24(a) "if a determination in the action may result in 'potential stare decisis effects.'" (Doc. No. 53-2 at 11–13) (quoting *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).) Indeed, "[i]ntervention may be required when considerations of stare decisis indicate that an applicant's interest will be practically impaired." *Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993).

---

[4] California law provides that "the rule against splitting a cause of action is violated where both the insurer and insured pursue separate actions" to recover against a third-party tortfeasor. (Doc. No. 53-2 at 6:4–6.) According to Markel, "[t]o avoid a violation of the rule against splitting a cause of action, the insured and insurer 'should join in a single suit against the tortfeasor.'" (*Id.* at 13–15) (citing *Ferraro v. S. Cal. Gas Co.*, 102 Cal. App. 3d 37, 43 (1980).) This explains why Markel would want to bring claims on behalf of itself and American in a single action, but this does not explain why Markel must be allowed to intervene in this action. Here, the insured (i.e., American) is not and has never been a party to this litigation. (*See* Doc. No. 53-2 at 23–24.) It is therefore unclear how the "rule against splitting a cause of action" is implicated by the pending motion. *Cf. Cummings v. United States*, 704 F.2d 437, 441 (9th Cir. 1983) (finding that an insurer that paid an insured's claims and had been subrogated to its insured's rights against another had the right to intervene in the *insured's lawsuit* to protect its subrogation rights). Because Markel's insured is not a party to this action, the court cannot conclude that Markel has a significantly protectible interest based solely on the rule against splitting causes of actions between an insured and insurer.

However, a court is not required to strictly apply principles of res judicata or collateral estoppel in order to find that an intervenor's interest may be impaired or impeded. *See Yniguez v. State of Ariz.*, 939 F.2d 727, 735 (9th Cir. 1991) (concluding res judicata would not apply to proposed intervenors in federal court's application of state law). Even where an earlier court's decision would have a "persuasive" effect on a later court, regardless of res judicata or collateral estoppel, an intervenor's interests could be impaired or impeded for purposes of intervention as of right. *Id.* ("[T]he question here is whether the district court's decision will result in *practical* impairment of the interests of [the proposed intervenors], not whether the decision itself binds them."). As the Ninth Circuit has explained, a court cannot "wholly overlook" the fact that a later court may find an earlier court's reasoning of certain issues "more persuasive than they might otherwise find a similar argument to be." *Id.* at 737.

Here, Markel's interest may be impaired or impeded as a practical matter. Markel has an interest in its legal claims asserted in the proposed complaint, which may, potentially, be impeded or impaired by this court's ultimate determination on certain issues in this case. For example, if the court finds that the existing plaintiffs cannot hold defendants strictly liable—for whatever reason—such a decision will likely have a "persuasive" effect on any later litigation in any court if Markel brings a strict products liability claim against defendants. *See Yniguez*, 939 F.2d at 737 (explaining that a subsequent court may "choose to accept the district court's reasoning to avoid confusion, lack of finality, and disrespect for law"). Accordingly, Markel satisfies the third element of intervention as of right under Rule 24(a).

**D.     Inadequate Representation of Interest**

Even if a proposed intervenor demonstrates it has a sufficient interest in the case that may be impaired if intervention is not granted, intervention is nonetheless improper if "existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Although the burden establishing inadequacy of representation is "minimal," courts should consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that

other parties would neglect." *Arakaki*, 324 F.3d at 1086. "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Id.* "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 951 (9th Cir. 2009) (quoting *League of United Latin Am. Citizens*, 131 F.3d at 1305). But the presumption of adequate representation does not apply if the proposed intervenor demonstrates that the existing parties' representation of its interest "'may be' inadequate." *Arakaki*, 324 F.3d at 1086 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972)). Therefore, a proposed intervenor must simply show that it "may" have an "adverse" interest to the existing parties. *Citizens for Balanced Use*, 647 F.3d at 898 ("We stress that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests.").

Markel notes that its "rights are not represented in this litigation as its insured is not a party to this action." (Doc. No. 53-2 at 6:23–24.) Although Markel's argument is not a model for specificity, the court nonetheless concludes Markel satisfies its minimal burden demonstrating that it would not be adequately represented by the existing parties during this litigation. Initially, it does not appear that plaintiffs and Markel "share the same 'ultimate objective.'" *Proposition 8 Official Proponents*, 587 F.3d at 951 (quoting *League of United Latin Am. Citizens*, 131 F.3d at 1305). While both assert identical claims against defendants, the "ultimate objective" of plaintiffs and Markel is to recover for their own damages—no matter which party is at fault. *See Forsyth v. HP Inc.*, No. 5:16-cv-04775-EJD, 2020 WL 71379, *4 (N.D. Cal. Jan. 7, 2020) ("The standard is not whether the intervenor and present party share identical claims."). For these reasons, it does not appear that plaintiffs "will undoubtedly make all of [Markel's] arguments" during the course of this litigation as the factual record develops. *Arakaki*, 324 F.3d at 1086. Markel and the existing plaintiffs may attempt to place blame on each other if (full) liability does not attach to defendants, and the existing plaintiffs therefore may not be "capable and willing" to make all the arguments Markel may want to raise. *See id.* Adding Markel to this litigation will also provide

some "necessary elements to the proceeding that other parties would neglect," given Markel's insured owns the gas station where the explosion occurred as well as the fueling equipment used by plaintiff William Johnson immediately before the explosion. *See id.* Because Markel "may" have an "adverse" interest to the existing plaintiffs, Markel's interest will not be adequately represented if intervention is denied. *See Citizens for Balanced Use*, 647 F.3d at 898

For the reasons discussed above, Markel satisfies all four elements to intervene as a matter of right under Rule 24(a)(2). *See Cal. ex rel. Lockyer*, 450 F.3d at 440–41.[5]

**CONCLUSION**

Accordingly:

1. The motion to intervene (Doc. No. 53) is granted; and
2. Markel American Insurance Company is ordered to file its complaint as a separate docket entry within fourteen (14) days of entry of this order.

IT IS SO ORDERED.

Dated:  **June 2, 2020**          /s/ Dale A. Drozd
                                   UNITED STATES DISTRICT JUDGE

---

[5] Although Markel mentions permissive intervention as an alternative basis for entering this lawsuit, it does not discuss permissive intervention in any detail. In any event, because the court is granting Markel's motion to intervene as of right, it is not necessary to discuss permissive intervention.

10